# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **WILLIAM CHARLES MORVA,** | ) | |
| **No. 1205820,** | ) | |
| | ) | |
| **Petitioner,** | ) | **Civil Action No. 7:13cv283** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KEITH W. DAVIS, Warden** | ) | **By:  Michael F. Urbanski** |
| **Sussex I State Prison,** | ) | **United States District Judge** |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This matter is before the court on the motion of petitioner William Charles Morva to find him incompetent and to stay these proceedings pending his restoration to competency.  Motion to Find Morva Incompetent and Stay Proceedings Pending His Restoration, Dkt. # 57.  Petitioner requests an evidentiary hearing on his competency motion.  Morva's Request for a Hearing and Memorandum in Support, Dkt. # 76.  Respondent opposes these requests.  Warden's Opposition to Morva's Motion to Stay, Dkt. # 62; Warden's Opposition to Morva's Motion for Hearing, Dkt. # 77.  Following a psychiatric evaluation by forensic psychiatrist Donna Schwartz-Watts, M.D. on August 21, 2014, Morva filed a supplemental motion.  Second Supplement to Morva's Motion to Find Morva Incompetent and Stay Proceedings Pending His Restoration, Dkt. # 112.

Morva was charged by the Commonwealth of Virginia with the capital murder of Derrick McFarland, a security guard at Montgomery Regional Hospital, on August 20, 2006, and Corporal Eric Sutphin, of the Montgomery County Sheriff's Office, on August 21, 2006.  The Commonwealth contended that Morva, a pretrial detainee at the Montgomery County Jail, sought medical attention for leg and forearm injuries on the evening of August 19, 2006.  Montgomery

County Sheriff's Deputy Russell Quesenberry transported Morva in waist chains to the hospital but did not secure the arm Morva claims to have injured. Following treatment and before heading back to the jail, Morva asked to use the bathroom at the hospital's emergency room. Using a metal toilet paper holder he removed from the wall, Morva beat Quesenberry unconscious and took his police pistol. The Commonwealth alleged that Morva exited the bathroom and encountered the unarmed hospital security guard, Derrick McFarland. Morva shot McFarland in the face at close range and fled. On the morning of August 21, 2006, during the course of the ensuing manhunt, Morva encountered Corporal Eric Sutphin on the Huckleberry Trail, a local greenway in Montgomery County. The Commonwealth alleged that Sutphin's police pistol was holstered when Morva shot him in the back of the head. Both Quesenberry and Supthin died from their gunshot wounds.

A jury convicted Morva of all charges, including three counts of capital murder, following a six day jury trial conducted in the Circuit Court of Washington County in March 2008.[1] Morva raised a number of issues on direct appeal, all of which were rejected by the Virginia Supreme Court in its decision of September 18, 2009. Morva v. Commonwealth, 278 Va. 329, 683 S.E.2d 553 (2009). Morva filed a petition for writ of habeas corpus in state court on December 3, 2010, which the Virginia Supreme Court dismissed on April 12, 2013. Morva v. Warden of the Sussex I State Prison, 285 Va. 511, 741 S.E.2d 761 (2013).

Morva filed a Notice of Intent to File a Petition for a Writ of Habeas Corpus in federal court on June 17, 2013, and the court appointed counsel on June 26, 2013. Morva filed an initial habeas Petition on September 19, 2013 and an Amended Petition on December 18, 2013. Also on December 18, 2013, Morva filed the pending motion that he be found incompetent and the habeas

---

[1] Morva was convicted of capital murder while in custody, Va. Code § 18.2-31(3), capital murder of a law-enforcement officer, Va. Code § 18.2-31(6), capital murder of more than one person within a three-year period, Va. Code § 18.2-31(8), assaulting a law-enforcement officer, Va. Code § 18.2-57(C), escape, Va. Code § 18.2-478, and two counts of use of a firearm in the commission of a murder, Va. Code § 18.2-53.1. After finding the aggravating factors of vileness and future dangerousness, the jury fixed Morva's sentence at death for each of the three capital murder convictions and sixteen years' imprisonment for the remaining convictions. The trial court sentenced Morva in accordance with the jury verdict.

2

proceedings stayed. On February 23, 2014, Morva filed a motion for a hearing on his motion to find him incompetent and to stay the habeas case.[2]

On July 18, 2014, the court conducted a hearing on Morva's request to proceed pro se and for substitution of counsel, which motions were denied. At the hearing, Morva, who had previously refused to meet with court appointed forensic psychiatrist Donna Schwartz-Watts, agreed to meet with her. An evaluation session was scheduled, and Morva's counsel was granted leave of court to file a Second Amended Petition on or before September 8, 2014.

In the Second Amended Petition filed on September 8, 2014, Morva raises the same twelve claims raised in his Amended Petition.[3] With two exceptions, all of the claims raised in the Second Amended Petition were raised either on direct appeal or in Morva's state habeas petition. Those exceptions are Claims IV and VIIIB, which present questions of law. "Given the backward-looking, record-based nature," Ryan v. Gonzales, 133 S.Ct. 696, 704 (2013), of Morva's habeas claims, the court concludes that there is no need for a stay or competency evaluation. Because of the nature of the claims that Morva has raised, his counsel can "provide effective representation . . . regardless of the petitioner's competence." Id. Accordingly, Morva's motion to stay and for a competency evaluation is **DENIED**.

## I.

Morva's federal habeas counsel assert in the motion that they have not been "able to gain sufficient trust with Morva to obtain his assistance with the investigation and presentation of his

---

[2] Each of these petitions and motions were filed by Morva's court appointed habeas counsel. Morva has himself filed a number of handwritten documents with the court. Morva has filed a motion to proceed pro se, Dkt. # 45, a motion for leave to file a habeas petition within one year, Dkt. # 46, a motion for substitution of counsel, Dkt. # 47, and his own pro se petition for writ of habeas corpus. Dkt. # 61. Each of these pro se motions has been denied, and Morva's competing pro se habeas petition has been dismissed without prejudice as he is represented by counsel. Morva has also written several letters to the court. Dkt. #s 25, 26, 37, 48, and 74.

[3] Indeed, the Second Amended Petition makes only two changes to the Amended Petition. Footnote one of the Second Amended Petition states that the Second Amended Petition changes only the final paragraph of the procedural history and pages 138-140 of Claim IX.

3

federal habeas claims." Dkt. # 57, at 1. Counsel argue that Morva exhibits signs of serious mental illness and that his condition has declined, rendering him unwilling and/or incapable of assisting with his federal habeas case.

Federal habeas counsel argue that they have been severely hampered by the absence of any assistance from Morva. For roughly ten weeks prior to the filing of the Amended Petition on December 18, 2013, Morva "severed all communications with his appointed counsel. Mr. Morva did not call, refused visits and refused mail." Dkt. #112, at 2. Although Morva resumed communications in February, 2014, counsel indicate that "[h]e was still uncooperative for that and subsequent phone calls, and remains so. Mr. Morva no longer refuses mail, but has refused all visits except Mr. Sheldon's August 21, 2014, visit for the evaluation." Id. Counsel recount that during the August 21, 2014 evaluation, Morva "insisted he could never work with appointed counsel and alleged that his court appointed attorneys were receiving bribes to botch his appeals." Id. Morva's counsel conclude that "there is no doubt that Mr. Morva has a serious mental illness and the evidence is overwhelming that he is unable to assist counsel and therefore incompetent." Id.[4]

In the Psychiatric Evaluation appended to Morva's supplemental motion, Dr. Schwartz-Watts concludes that Morva meets "the diagnostic criteria for a Delusional Disorder, persecutory type." Psychiatric Evaluation, Dkt. # 112-1, at 6. Dr. Schwartz-Watts indicated that Morva "does not meet the diagnostic criteria for schizophrenia at this time. His thought processes were organized and he is not hallucinating. There are no records that indicate he has hallucinated." Id. Dr. Schwartz-Watts' Psychiatric Evaluation contains the following opinion:

---

[4] In support of the original motion, Morva's counsel included the opinion of Dr. Schwartz-Watts, at that time formed solely on the basis of a review of records concerning Morva. Dr. Schwartz-Watts attempted to interview Morva on November 19, 2013 at the Sussex I State Prison, but Morva refused to meet with her. At a hearing conducted on July 18, 2014, Morva agreed to an evaluation by Dr. Schwartz-Watts, provided it was recorded. Dr. Schwartz-Watts conducted her evaluation on August 21, 2014, and prepared a written Psychiatric Evaluation dated September 7, 2014.

4

> Mr. Morva is not able to assist his attorneys. He reports they are being bribed and are attempting to "botch his appeals." He also reports he does not feel safe with them. Delusional Disorders are difficult to treat, however Mr. Morva has reportedly never been treated with medication.

Id. With regard to Morva's mental state, Dr. Schwartz-Watts makes the following recommendation:

> Although delusional disorders are less likely to respond to antipsychotic medication, Mr. Morva has not been previously treated. His mental status may improve with treatment.

Id.

Morva's counsel argue that in order to establish deficient performance of counsel under Strickland v. Washington, 466 U.S. 668, 691 (1984), it is "necessary and critical to discuss with Morva the relationship, if any, he had with his trial and state post-conviction lawyers." Id. Counsel continue:

> Morva will also need to be able to relate whether prior counsel asked for historical information concerning his mental health, medical and family history, whether prior counsel asked Morva to sign releases of information, whether prior counsel consulted with Morva about the details of the claim that federal habeas counsel are first raising, and what additional defenses would have been available at trial. Or, if none of this happened, Morva needs to be able to explain that his prior counsel sought no information from him, presented no facts to him, failed to consult him concerning relevant issues, or sought no waiver of presentation from Morva. All of this information is necessary to prove the first prong of an ineffective assistance of counsel claim under Strickland.

Dkt. # 57, at 22.

Morva's counsel argue that "claims IX-XII[ ], involving trial counsel's failure to sufficiently investigate and present evidence to Morva's mental health experts and the court, are highly fact dependent, went undeveloped in state habeas, and will remain only partially developed unless and until this Court stays the proceedings and allows the prison to restore Morva's competence." Id. at 21.

In the supplemental motion, Morva's counsel add:

> Prior counsel failed to use information provided by Mr. Morva regarding abuse and threats he claimed he suffered at the jail because of the difficulty of determining whether these were delusions, exaggerations or facts. Mr. Morva has insisted that he was shackled and dropped on his face by deputies at the jail, dislocating his jaw, that he was burned by a deputy with a cigarette, and that deputies and law enforcement threatened him with beatings and even death. Not only are these facts compelling, if true, for several of Mr. Morva's sentencing claims, but would have been entirely consistent with trial counsel's strategy. In addition, a non-delusional Mr. Morva would have presented a far different visage to the jury than the Charles Manson-like cold hearted, long-bearded unapologetic defendant. If Mr. Morva is medicated, he will likely be able and willing to show the remorse that his trial counsel so desperately needed and wanted him to show at trial.

Dkt. # 112, at 3. Because there is "great hope that Morva will be restored in a short time with reasonable treatment," id., his counsel argue that the case be stayed until he can be restored to competency.

In his opposition, Keith W. Davis, the Warden of Sussex I State Prison ("Warden"), responds that Morva has not demonstrated that he is incompetent, and that even if he was incompetent, "[g]iven the backward-looking, record-based nature of most federal habeas proceedings, counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence." Ryan v. Gonzales, 133 S. Ct. at 705.

## II.

In Ryan v. Gonzales, the Supreme Court defined the "outer limits"[5] of a district court's discretion to grant an evidentiary hearing and stay habeas proceedings based on a petitioner's competence. The opinion in Ryan stemmed from the Court's consideration of two federal death penalty habeas proceedings, one from Arizona and one from Ohio.

In the Arizona case concerning Valencia Gonzales, the Court reversed the decision of the Ninth Circuit Court of Appeals, which, in turn, had overturned a district court's denial of a motion

---

[5] The Court noted that "[f]or purposes of resolving these cases, it is unnecessary to determine the precise contours of the district court's discretion to issue stays. We address only its outer limits." Id. at 708.

6

to stay pending a competency evaluation.  The Court concluded that as "all of Gonzales' properly

exhausted claims were record based or resolvable as a matter of law, irrespective of Gonzales'

competence," the district court did not abuse its discretion in denying the stay "because a stay is not

generally warranted when a petitioner raises only record-based claims subject to 28 U.S.C.

§ 2254(d)."  133 S.Ct. at 708.  The Court reasoned:

> As previously noted, review of such claims "is limited to the record
> that was before the state court that adjudicated the claim on the
> merits."  [Cullen v.] Pinholster, 131 S.Ct. at 1398.  Accordingly, any
> evidence that a petitioner might have would be inadmissible.  Ibid.
> ("[T]he record under review is limited to the record in existence at
> the same time – i.e., the record before the state court").  Because
> federal habeas is "a 'guard against extreme malfunctions in the state
> criminal justice systems,' not a substitute for ordinary error correction
> through appeal," the types of errors redressable under § 2254(d)
> should be apparent from the record.  Harrington v. Richter, 131 S.Ct.
> 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5
> (1979) (Stevens, J., concurring in judgment)).  Counsel can read the
> record.

Id.

In the Ohio case concerning Sean Carter, the Court vacated the judgment of the Sixth

Circuit Court of Appeals and remanded the case to ascertain whether Carter could pursue one claim.

Unlike in Gonzales, the district court in Carter concluded that four of Carter's claims could

potentially benefit from Carter's assistance.  As three of these claims were adjudicated on the merits

in state postconviction proceedings, they were subject to review under § 2254(d).  Noting that "[a]ny

extrarecord evidence that Carter might have concerning these claims would therefore be

inadmissible, . . . [c]onsequently, these claims do not warrant a stay."  Id. at 709 (citation omitted).

As regards the fourth claim, the Court could not determine from the record whether it had been

exhausted.  "If that claim was exhausted, it too would be record based.  But even if Carter could

show that the claim was both unexhausted and not procedurally defaulted, an indefinite stay would

be inappropriate." Id. The Court remanded the case to the district court for resolution of this one claim.

Under the framework set forth in Ryan, the court will consider Morva's request for a stay vis-à-vis each of his federal habeas claims.[6]

### III.

Morva's federal habeas petition raises twelve claims, nearly all of which were raised previously, either on direct appeal or in his state habeas petition. Only claims Claim IV and VIIIB are new. Both of those claims, however, present issues of law as to which Morva's present competence is immaterial.

In Claim IV, Morva contends that trial counsel were ineffective for stipulating that he was imprisoned and in lawful custody on August 20, 2006. Morva argues that the Commonwealth of Virginia charged him with killing hospital security guard McFarland in violation of Virginia Code § 18.2-31(3), requiring the Commonwealth to prove that he was "confined as a prisoner in a local or state correctional facility . . . or while in custody of an employee thereof" at the time of McFarland's death. Morva argues that at the time McFarland was killed, he was neither confined nor in custody. On this purely legal issue, the facts are undisputed. Morva was being held in pretrial detention at the Montgomery County Jail awaiting trial on burglary and related charges. In the early morning hours of August 20, 2006, Morva was taken to Montgomery Regional Hospital for medical treatment in the custody of Deputy Quesenberry. Morva beat Deputy Quesenberry unconscious with a bathroom toilet paper dispenser, and while exiting the hospital, killed the unarmed McFarland with Deputy Quesenberry's gun. Morva contends that he was neither in a correctional facility nor in

---

[6] Although Morva has requested an evidentiary hearing on his motion to stay, the court does not believe such a hearing is needed. The court has reviewed the voluminous record from the trial court, direct appeal and state habeas. The court also has reviewed the September 7, 2014 Psychiatric Evaluation prepared by Dr. Schwartz-Watts. Given the record in this case, there is no need for any additional evidence or argument on the motion to stay. Accordingly, the request for an evidentiary hearing, Dkt. # 76, is **DENIED**.

8

custody at the time he shot McFarland, and that trial counsel were ineffective for stipulating that he was in custody. In essence, Morva argues that because he had beaten Deputy Sheriff Quesenberry unconscious, he was no longer in his custody. Morva argues that because he had escaped when McFarland was killed, he could not have been convicted under Va. Code § 18.2-31(3). Morva argues that he was:

> [P]rejudiced by trial counsel's error because if trial counsel had refused the stipulation, either a motion to strike this capital charge by the defense would have been successful or the jury could not have found Morva guilty of the capital murder of Mr. McFarland. And if the jury found Morva not guilty of the capital murder of McFarland it could have also tipped the scales in Morva's favor in the jury's selection of punishment for the other capital charges: the killing of Mr. Sutphin and the killing of more than one person in a three year period.

Second Amended Petition, Dkt. # 111, at 70. Morva also asserts that state habeas counsel were ineffective for not raising this claim. Regardless, Claim IV only involves a question of law and may be determined based on the trial record. As such, under Ryan v. Gonzales, Morva's present competence bears no relevance to this claim.

In Claim VIIIB, Morva contends that trial counsel were ineffective and should have objected to the jury instructions and verdict forms given and asked the trial court to instruct the jury not to double or triple count the aggravating factors that enabled the jury to find Morva eligible for a death sentence. Morva argues that the format of the verdict forms required the jury to consider the aggravating factors of vileness and future dangerousness nine times, resulting in over emphasis being placed on these factors in the jury's final selection of punishment. Morva also notes in his federal habeas petition that state habeas counsel were ineffective for failing to raise this claim. As with Claim IV, Claim VIIIB presents a record-based question of law as to which Morva's present competence has no bearing.

9

The Supreme Court of Virginia has addressed the remainder of Morva's claims, either on direct appeal or in connection with his state habeas petition. All of these claims are either record based or resolvable as a matter of law. As such, Morva's competence at this point has no relevance to the court's consideration of those claims.

In Claim I, Morva contends that the state court's denial of a risk assessment expert on the issue of future dangerousness violated his rights under the Eighth and Fourteenth Amendments. Prior to trial, Morva moved for the appointment of a forensic psychologist, Dr. Mark D. Cunningham, to provide rebuttal testimony on the issue of the continuing threat aggravating factor. Morva believed that this evidence was necessary to be able to respond to the prosecution's claim that he would pose a continuing threat of serious violence because his case involved a jailbreak and the ensuing killings of two security/law enforcement officers. The trial court denied Morva's motion, and the issue was considered on the merits and rejected by the Virginia Supreme Court on direct appeal. In his federal habeas petition, Morva argues that the Virginia Supreme Court's decision flies in the face of United States Supreme Court precedent and that the issue of dangerousness was obviously relevant to the defense of his capital case. The state court's decision to exclude this evidence is plainly a question of law. As such, under Ryan v. Gonzales, Morva's federal habeas counsel "can provide effective representation . . . regardless of the petitioner's competence." 133 S.Ct. at 705.

Morva's current competence likewise has no bearing on Claim II, concerning whether his trial counsel were ineffective for failing to object that his restraints were visible during trial. On this point, Morva has argued, both in his federal and state habeas petitions, that certain jurors saw his leg restraints and a bulge under his clothing. In Claim IIA, Morva contends that the presence of visible restraints violated due process. The Supreme Court of Virginia held that this claim, raised in

10

Morva's state habeas petition, was barred because it was not raised on direct appeal. Claim IIB alleges ineffective assistance of counsel for failing to object to visible restraints. This claim was dealt with on the merits by the Virginia Supreme Court on state habeas. Regardless, the issue presented in Claim II is both record based and a question of law. Morva's current competence has no bearing on this claim.

The same is true for Claim III, in which Morva contends that the exclusion of potential trial juror Mary Blevins violated the United States Constitution. This issue was raised on direct appeal in state court and was addressed by the Virginia Supreme Court on the merits. Claim III is both record based and an issue of law, as to which Morva's current competence is irrelevant.

In Claim V, Morva contends that his trial counsel were ineffective for failing to investigate and challenge forensic and other evidence relating to the shootings. As to this issue, raised in his state habeas petition and dealt with on the merits by the Virginia Supreme Court, Morva contends that his trial counsel were ineffective in cross-examination and argument in not emphasizing McFarland's dark SWAT team/paramilitary style uniform and in not pursuing the inconsistencies in Blacksburg Police Officer Brian Roe's testimony concerning the circumstances of Corporal Sutphin's death, particularly with regard to whether Corporal Sutphin's holster was snapped shut at the time he was killed. Morva's current competence is irrelevant as to the entirely record-based inquiry as regards trial counsel's handling of the evidence concerning the shootings.

Claim VI was likewise raised in Morva's state habeas petition and addressed by the Virginia Supreme Court on the merits. In this claim, Morva argues that his trial counsel were ineffective for failing to investigate and present evidence as to the conditions at the Montgomery County Jail that would have supported an imperfect self-defense claim. Morva contends that statistics show that the Montgomery County Jail was operating at nearly three times the Virginia Department of Corrections Rated Operating Capacity and that the jail's expenditure of funds on inmate medical services shows

11

that its ability to provide adequate medical services was even more deficient. Morva contends that

the lack of medical care markedly affected him, principally due to pronounced, life-long problems

with his digestive system. Contrary to the Commonwealth's argument that Morva's escape was due

to his scheduled criminal trial, Morva contends that his escape was precipitated by his fear and

paranoia regarding his physical state. He contends that his trial counsel were ineffective for failing

to present an imperfect self-defense, which would have mitigated the offense from murder to

voluntary manslaughter. The federal habeas petition makes clear that Morva's intense fear and

paranoia were established several times at trial through the testimony of his mother, his

gastroenterologist, Dr. Mark Ringold, and forensic psychiatrist Dr. Bruce Jeffrey Cohen. Morva's

counsel argue that trial counsel were ineffective in not investigating and introducing evidence

regarding jail conditions and thus missed the opportunity to present evidence and argue for the

applicability of imperfect self-defense. Morva's petition states as follows:

> Had counsel argued imperfect self-defense, it is probable that the
> outcome of Morva's case would have been different. Even if the jury
> concluded that Morva's fear was unreasonable, it is possible that at
> least one juror may have found that although Morva's belief that his
> life was in danger may have been unfounded, it was sincerely held.
> Morva's mental state was a question of fact to be decided by the jury,
> Darnell v. Commonwealth, 370 S.E.2d 717, 720-21 (Va. Ct. App.
> 1988), and if even a single juror believed Morva's fear was real, had
> the instruction been given, Morva would have been convicted of
> voluntary manslaughter instead of murder. This reasonable
> probability is sufficient to undermine confidence in the outcome of
> Morva's trial. Strickland, 466 U.S. at 694 (1984).

Dkt. # 111, at 84-85. The court can assess whether Morva's counsel were ineffective from the trial

court record. Moreover, Morva argues that the Virginia Supreme Court's rejection of this claim

during state habeas review was an unreasonable application of federal law. Thus, as to this claim as

well, Morva's present competence is immaterial.

Claim VII concerns whether Jury Instruction 8A was contrary to and an unreasonable

application of clearly established federal law. This instruction stated that "You may infer that every

person intends the natural and probable consequences of his acts." Morva contends that this instruction runs afoul of the holding in Sandstrom v. Montana, 442 U.S. 510 (1979), where the Court held that a jury instruction to the effect of "the law presumes that a person intends the ordinary consequences of his voluntary acts," id. at 512, violated the defendant's right to due process of law. Id. at 524. On direct appeal, the Virginia Supreme Court rejected Morva's contention regarding Jury Instruction 8A, concluding that "this jury instruction concerns only a permissive inference as opposed to a constitutionally improper presumption." Morva v. Commonwealth, 278 Va. at 342, 683 S.E.2d at 561. Regardless, Morva's present competence has no bearing on the issue of the constitutionality of Jury Instruction 8A.

The same is true as regards Claim VIIIA, in which Morva contends that trial counsel were ineffective for not objecting to the duplicative charging and verdict forms on the basis that his third death sentence, imposed for killing more than one person in a three year period, was impermissibly derivative under Claggett v. Commonwealth, 252 Va. 79, 472 S.E.2d 263 (1996), as the killings that made up that offense were themselves capital offenses. On state habeas, the Virginia Supreme Court rejected the claimed Claggett violation, finding it barred as it was not raised at trial or on direct appeal. The Virginia Supreme Court considered Morva's other double jeopardy challenges to be frivolous and that counsel were not ineffective for failing to raise them. Morva v. Warden, 285 Va. at 519, 741 S.E.2d at 788. Again, Morva's present competence is irrelevant to these record-based questions of law.

Claim IX, alleging that trial counsel failed to adequately investigate and present available mitigation evidence at the sentencing phase, presents a closer question. In this claim, Morva asserts that "trial counsel conducted an unreasonable and inadequate investigation of Morva's childhood and family background, as well as substantial evidence from lay witnesses of Morva's mental illness; counsel failed to provide this information to mental health experts in order to ensure an accurate

13

and reliable diagnosis; and counsel failed to adequately present all of the available mitigating evidence in the capital sentencing hearing." Dkt. # 111, at 100.

This issue was addressed in great length in Morva's state habeas petition, and much of the state habeas appendix is directed to this issue. In both his state and federal habeas petitions, Morva recounts his father's traumatic experiences surviving the Holocaust, World War II, Soviet repression in Hungary, and flight as a refugee following the failed Hungarian Revolution of 1956. Likewise, state and federal habeas counsel fault Morva's trial counsel for their deficient investigation of his mother's multi-generational history, including the mental illness and alcoholism of his maternal grandmother. In each petition, habeas counsel address at great length the deplorable conditions of his upbringing, including horrendous hygiene, poor nutrition and physical and mental abuse. Mirroring the state petition, the federal habeas petition alleges that Morva "spent his childhood in terror; his environment was unpredictable and controlling. The only thing he knew with certainty was his father's relentless abuse and violence." Dkt. # 111 at 118-19. The federal habeas petition summarizes trial counsel's failure to investigate his background as follows:

> Trial counsel did not conduct interviews or try to obtain any records that were relevant to the history of either Will's paternal or maternal side of the family. They conducted little or no investigation of his immediate family, much less a multi-generational family history. They collected only medical and incarceration records related to Will. Their failure to collect other documents was compounded by their failure to elicit family history from mitigation witnesses.
>
> None of Will's family members testified at his capital murder trial. Defense witnesses who mentioned Will's home life had no direct experience of it and made only sparse and unsubstantiated comments. Their testimony provided only a pale shadow of Will's history and background: "I got the impression he had some problems with his father," JA 2194; Will's father had "a thick accent" and "wanted him to take a lot of advanced classes," JA 2199; "as far as I can tell from looking back at it, he never really liked to go home," JA 2224; after the death of Will's father, he worried about his mother because "she was currently living out of her car . . . He had a lot of respect for his father. . .", JA 2257-58. No one testified who

14

had direct experience with Will's family or knowledge of the complexities of his family situation.

Trial counsel's inadequate investigation deprived jurors of extensive, relevant, and accurate information about Morva's history, background, and character – evidence that explained how he developed or that diminished his moral culpability. Trial counsel failed to sufficiently investigate people who could have provided meaningful insight into his home life, even though Will specifically told counsel to talk to some of them. SHA 7, 16-17, 33-34, 88, 138-39, 147, 174, 186-87, 205-06, 213-14, 216-17, 258-59, 331, 411, 414-15, 425, 430-32, 442, 485, 450-51.

Counsel also unreasonably failed to obtain information from friends and family about the symptoms of Morva's apparent descent into mental illness, which, if reviewed by the trial experts, would have raised "plenty of 'red flags' pointing" to a more serious mental illness. Rompilla v. Beard, 545 U.S. 374, 392 (2005). In addition to supporting an accurate mental health diagnosis, the evidence discussed in this claim was not adequately investigated and presented in mitigation.

Dkt. # 111, at 120-21. The state habeas petition described trial counsel's failings in this way:

Counsel's inadequate investigation of Will's multi-generational history deprived jurors of a complex, multifaceted description of Morva as a human being and prejudiced him. Will was a product of his environment, and his caretakers' backgrounds and limitations directly affected Will. An adequate investigation of Will's family and cultural history was necessary for jurors to have an accurate understanding of Will's culture, background, and life story. This is precisely the kind of evidence that the Supreme Court has identified as powerfully mitigating. Had such an understanding been provided, there is a reasonable probability at least one juror would have chosen life without parole as an appropriate sentence.

Morva v. Warden, No. 102281, Amended Petition for Writ of Habeas Corpus, at 64.

Morva also asserts in his federal habeas petition that his trial counsel failed to prepare his mental health expert witnesses with adequate information to reach and support a proper diagnosis. The petition recounts at some length Morva's delusional and aberrant views that modern civilization was destroying the world and that he was chosen to save the innocent from the destructive forces in the world.

15

> Morva, believing that the fate of the world was literally at stake and that he was in imminent danger of death, concluded that drastic measures were required. He escaped jail in order to regain strength and return to his efforts to protect the innocent people and combat the destructive forces, the mission he was called to complete. When the destructive forces tried to stop him, he defended himself. It was imperative that he be free in order to save the Earth.

Dkt. # 111, at 127.

Further, Morva contends that his trial counsel, aware of Morva's mental health problems, failed to pass this information on to the mental health experts.

> Specifically, trial counsel recognized early on that Morva exhibited mental health problems and requested an evaluation for competency to stand trial and appointment of two mental health experts. JA 4-9, 552-60. Despite the inadequate quality of trial counsel's mitigation investigation, their cursory interviews with Morva's family and friends uncovered pertinent information. In further violation of the Sixth and Fourteenth Amendments, Strickland v. Washington, 466 U.S. 668 (1984), counsel unreasonably failed to advise the appointed mental health experts of this information, failed to provide the mental health expert with notes of the witness interviews, and failed to arrange for these witnesses to speak directly with the mental health experts. It was, therefore, unreasonable for counsel not to provide these experts with the information necessary to make accurate and informed diagnoses.

> Reasonable counsel would have investigated this information further and discovered information that would have assisted the appointed mental health experts in making an informed and accurate diagnosis and explaining that diagnosis to the jurors. Had counsel provided even the minimal information they had obtained to a mental health expert, there is a reasonable probability that the mental health experts would have made an Axis I diagnosis as addressed above.

Dkt. # 111, at 128-29.

The state habeas petition devotes substantial attention to these alleged failings, and the state habeas appendix is replete with evidence of Morva's family history, background, upbringing and mental state. In fact, nearly all of Volume I of the appendix to the state habeas petition, consisting

16

of 501 pages, concerns these issues.[7]  Much of the remaining eight volumes of the state habeas appendix also concern Morva's background, family and medical history.

Morva contends that the record supports the conclusion that he was mentally ill, and his counsel were ineffective for not presenting this evidence at the sentencing stage.

> Equipped with a diagnosis of delusional disorder, a major mental illness and a DSM V axis I disorder, and the family and social history and symptoms supporting the diagnosis, competent counsel would have been able to explain to the jurors how Morva's criminal actions were directly related to and a product of his mental illness – a circumstance far beyond his control that diminishes his moral culpability. . . .  In addition, rather than Morva's violence being the product of a depraved and evil mind, trial counsel could have had an explanation for the jury that Morva's mental illness was a but-for cause of the violence, reducing his moral culpability and providing a strong argument for life in prison rather than a death sentence. . . . Further, trial counsel could have asked the trial court for intervention and treatment.  Treatment would have led to a client who would have presented an entirely different visage.  Instead of the Charles Mason-esque unshaven and unremorseful client, Morva would have been able to show the jury who he was without the full effect of his mental illness:  a thoughtful, peaceful and remorseful person.
>
> There is a reasonable probability that if all of the available family history, social history, and evidence of mental illness had been provide[d] to Morva's trial experts and presented to a jury that the result would have been at least one juror would have voted to sentence Morva to life without the possibility of parole.

Dkt. # 111, at 140-41.

The court has reviewed the trial court record, the state habeas pleadings, including all nine volumes of the state habeas appendix, and the opinions of the Virginia Supreme Court on direct appeal and state habeas.  As noted, much of the state habeas petition focused on trial counsel's alleged failure to investigate and present mitigation evidence, especially concerning Morva's family history and mental health condition.  Given the large volume of information on this subject presented in connection with the state habeas petition, including the detailed affidavit of forensic

---

[7] A few of the affidavits in this volume of the state habeas appendix concern post-trial communications with jurors.

clinical psychologist Dale G. Watson, Ph.D., the court is plainly able on this record to assess whether trial counsel provided ineffective assistance of counsel under Strickland during the sentencing phase of Morva's capital trial. Thus, given the depth and breadth of the record on this issue developed during the state habeas proceeding, and the court's ability to review that information and the mitigation evidence presented at trial, the court cannot conclude that Morva's present competence can have a material impact on this claim under the appropriate standard of review set forth in 28 U.S.C. § 2254(d).

Claim X asserts that trial counsel were ineffective for failing to ensure that Morva was provided with constitutionally adequate expert assistance under the standard set forth by the Supreme Court in Ake v. Oklahoma, 470 U.S. 68 (1985). In Ake, the Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 83. Further, in a capital case, an indigent defendant is entitled to such assistance at the sentencing stage. "In such a circumstance, where the consequence of error is so great, the relevance of responsive psychiatric testimony so evident, and the burden on the State so slim, due process requires access to a psychiatric examination on relevant issues, to the testimony of the psychiatrist, and to assistance in preparation at the sentencing phase." Id. at 84. Although Morva had the benefit of the assistance of two expert witnesses at the sentencing phase of his trial, Dr. Scott Bender, a neuropsychologist, and Dr. Bruce Cohen, a forensic psychiatrist, he argues that he was denied due process because the expert witnesses were objective, as opposed to acting in his best interest.[8] Morva argues that "[t]his self-imposed non-advocacy role improperly denied Morva

---

[8] Morva's argument stems from an identical sentence in the Confidentiality Statement of Dr. Cohen's Capital Sentencing Evaluation and Dr. Bender's Neuropsychological Evaluation Report, stating as follows: "He was informed that the goal of the evaluation would be to prepare a report that sought objectivity rather than to act in his

18

constitutionally-guaranteed expert assistance in the identification, development, and presentation of evidence that would cast Morva's history, character, background, and mental condition in the light most favorable to the defendant, within the bounds of science." Dkt. # 111, at 146. The Virginia Supreme Court rejected this claim in the state habeas petition, noting that "Morva was entitled to, and received, 'access to [ ] competent' mental health experts to 'conduct an appropriate examination and assist in evaluation, preparation, and presentation of" Morva's defense, as required by Ake v. Oklahoma, 470 U.S. 68, 84 (1985)." Morva v. Warden, 285 Va. at 522, 741 S.E.2d at 790. The Virginia Supreme Court noted that "Morva proffers no authority for his contention that the experts appointed to assist Morva should be biased in Morva's favor." Id. Morva's contention in Claim X is both record based and a question of law. Morva's present competence is of no moment to this claim.

In Claim XI, Morva contends that counsel were ineffective for failing to investigate and present powerful mitigation evidence that Morva had saved a man's life and helped the Commonwealth prosecute the man's assailant. The Virginia Supreme Court rejected this argument raised in Morva's state habeas petition, concluding that the evidence was "double-edged" as it showed "that Morva had become increasingly anti-social leading up to the murders, had expressed his disdain for law-enforcement, and felt justified in his criminal behavior." Morva v. Warden, 285 Va. at 520, 741 S.E.2d at 789. The court noted that such tactical decisions should not be second-guessed in habeas corpus and did not constitute deficient performance. Morva argues that the state habeas decision was an unreasonable determination of the facts and an unreasonable application of Strickland. The nature of the claimed mitigation evidence is set out in the state habeas petition. As such, the court's inquiry into whether counsel were ineffective for failing to investigate and present

_____

best interest." Appendix to Petition for Writ of Habeas Corpus State Habeas filed by Morva in the Virginia Supreme Court, Vol. VI, at 2465, 2483.

this mitigation evidence is entirely record based. Morva's present competence does not bear on this issue.

Finally, in Claim XII, Morva challenges the Virginia Supreme Court's conclusion on direct appeal that the trial court did not err in denying Morva's motion to strike vileness as an aggravating factor for the imposition of the death penalty. On direct appeal, the Virginia Supreme Court found vileness to be met from Morva's depravity of mind. The court defined depravity of mind as "a degree of moral turpitude and psychical debasement surpassing that inherent in the definition of ordinary legal malice and premeditation." Morva v. Commonwealth, 278 Va. at 352, 683 S.E.2d at 566. Summarizing the trial evidence, the court concluded as follows:

> Morva's words contained in a letter written from jail to his mother described his planned intent to kill guards. Such planning is evidence of Morva's depravity of mind.
>
> Morva viciously attacked a guard who had taken Morva to receive medical attention, fracturing the guard's face with a metal toilet paper holder that Morva had removed from the wall. Neither of the men killed by Morva posed a physical threat to him. Morva shot MacFarland, who was passive and unarmed, in the face at point-blank range; he shot Corporal Sutphin in the back of the head while Sutphin's gun was still holstered. Additionally, Morva had several hours from the time he shot MacFarland to consider the consequences of his actions before he shot Corporal Sutphin. This fact indicates a lack of remorse or regret for his actions.

Id., 278 Va. at 353, 683 S.E.2d at 566-67 (citations omitted). As the issue presented in this claim turns entirely on the evidence adduced at trial, Morva's present competence is immaterial.

## V.

In sum, the claims raised in Morva's federal habeas petition turn on questions of law and/or are entirely record based allowing the court to adjudicate them under the standard set forth in 28 U.S.C. §2254(d). Accordingly, Morva's present competence is irrelevant to the court's consideration of his habeas petition. As such, his motion to stay this habeas petition pending evaluation of and restoration of his competence is **DENIED.**

20

A separate Order consistent with this Memorandum Opinion will be entered.

Entered:  September 12, 2014

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge